UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORIO DIAZ, individually and on behalf all others similarly situated, and MARIA SALGADO

        Plaintiffs,

v.

LAB TEC COSMETICS BY MARZENA, INC. and MARZENA SAVAS, individually,

        Defendants.

## COMPLAINT

Plaintiffs, Gregorio Diaz, individually and on behalf of all others similarly situated; and Maria Salgado (collectively, "Plaintiffs"), by and through their attorneys, Caffarelli & Associates Ltd., and for their Complaint against Defendants Lab Tec Cosmetics by Marzena, Inc. ("LTCM"), and Marzena Savas, individually ("Savas") (collectively "Defendants"), state as follows:

### NATURE OF ACTION

1. This is a collective action based on Defendants' failure to compensate Plaintiff Diaz and those similarly situated the overtime rate of one and one-half times employees' regular rate of pay (the "overtime rate") for hours worked in excess of forty (40) per week ("overtime hours"), in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Plaintiff Diaz also brings an individual claim for this unlawful pay practice pursuant to the overtime provisions of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1 *et seq*. ("IMWL").

2. Separately, Plaintiffs Diaz and Salgado bring a claim for Defendant LTCM's violations of the Biometric Information Privacy Act, 740 ILCS 14/l, *et seq*. ("BIPA")

## JURISDICTION AND VENUE

3. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 29 U.S.C. § 216(b) (right of action under the FLSA).

4. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. The unlawful practices described herein were committed within the State of Illinois, at Defendant LTCM's principal place of business in DuPage County, Illinois. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Diaz is an adult resident of Addison, Illinois. He worked for Defendants from 2010 through January 2020.

7. Salgado is an adult resident of Addison, Illinois. She worked for Defendants from May 20, 2014 through March 16, 2020.

8. Throughout his employment, Plaintiff Diaz was an "employee" of Defendants within the meaning of the FLSA and IMWL.

9. Defendant LTCM is, according to its website, "a personal care contract manufacturer, and private label company." It develops, manufactures, and packages cosmetic products. Defendant LTCM maintains its principal place of business in Addison, Illinois.

10. Defendant LTCM is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

11. Defendant LTCM is subject to the overtime provisions of the FLSA and IMWL, and is an "employer" within the meaning of those statutes.

12. Defendant Savas is the President and CEO of Defendant LTCM. Throughout Plaintiff Diaz's employment, she had the authority to, and did, hire and fire employees; direct and supervise the work of employees; sign on Defendant LTCM's checking accounts, including payroll accounts; and make or participate in decisions regarding employee compensation.

13. Defendant Savas is subject to the overtime provisions of the FLSA and IMWL, and is an "employer" within the meaning of those statutes.

## STATEMENT OF FACTS

### Facts Relating to FLSA and IMWL Claims

14. Plaintiff Diaz began working for Defendants in or around 2010.

15. Throughout his employment with Defendants, Defendants paid Plaintiff Diaz at his regular hourly rate for all hours, including overtime hours.

16. During the three years preceding the filing of this Complaint, Plaintiff Diaz worked approximately 60 hours per week.

17. During the three years preceding the filing of this Complaint, Defendant paid Plaintiff at his regular hourly rate for all hours he worked, including for overtime hours.

18. During the three years preceding the filing of this Complaint, Plaintiff Diaz was not exempt from the minimum wage or overtime provisions of state or federal law.

19. Defendants knew or should have known about their obligation to pay Plaintiff Diaz and other non-exempt employees an overtime rate for all overtime hours.

### Facts Relating to BIPA Claims

20. Throughout both Plaintiffs' employment, LTCM implemented the use of a biometric scanner. Plaintiffs were required to have their fingerprint and/or handprint

collected and/or captured so that LTCM could store it and use it as an authentication method for timekeeping purposes.

21. Defendant LTCM failed to maintain or publicize information about its biometric practices or policies; and failed to provide Plaintiffs with information about its policies or practices.

22. Each day, Plaintiffs were required to place their finger and/or hand on a panel to be scanned in order to 'clock in' and 'clock out' of work.

23. Defendant LTCM failed to provide Plaintiffs with written notice of the fact that it was collecting biometric information prior to collection.

24. Defendant LTCM failed to obtain prior written consent from Plaintiffs before it collected, stored, or used those individuals' biometric information.

25. Defendant LTCM did not inform Plaintiffs of the specific purposes or length of time for which it collected, stored, or used his fingerprints and/or handprints.

26. Defendant LTCM did not inform Plaintiffs of any biometric data retention policy developed by Defendant, nor has either Plaintiff ever been informed of whether Defendant will ever permanently delete their fingerprints and/or handprints.

27. Neither Plaintiff was ever provided and neither Plaintiff ever signed a written release to allow Defendant LTCM to collect or store their fingerprints and/or handprints.

28. Through its actions and omissions in violation of BIPA described herein, Defendant LTCM has continuously and repeatedly exposed Plaintiffs to risks, harmful conditions, and violations of privacy.

## COUNT I
## FAIR LABOR STANDARDS ACT
### (Collective Action Against Both Defendants)
### (On Behalf of Plaintiff Diaz Only)

29. Plaintiff Diaz re-states and incorporates each of the above paragraphs as though fully set forth herein.

30. This Count arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for their failure to pay Diaz and all putative class members at the overtime rate for all overtime hours worked.

31. Pursuant to 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who has been damaged by Defendants' failure to comply with 29 U.S.C. § 207. Plaintiff Diaz attaches as **Exhibit A** his Notice of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

32. All past and present employees of Defendants who were required to and did work overtime hours and were not paid at the overtime rate for all overtime hours worked are similarly situated to Plaintiff Diaz, in that Defendants applied their compensation policies, which violate the FLSA, on company-wide bases for at least all putative class members.

33. Defendants' failure to pay overtime wages for all overtime hours was a willful violation of the FLSA; Defendants either knew their conduct violated the FLSA or showed reckless disregard for whether their actions complied with the FLSA.

34. Plaintiff Diaz's experiences are typical of the experiences of the putative class members, as set forth above.

35. For all members of the putative class to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send

notice to the entire putative class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

36. The members of the putative class who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

WHEREFORE, Plaintiff Gregorio Diaz, on behalf of himself and all other similarly situated individuals, known and unknown, respectfully requests that this Court enter an order as follows:

a) Awarding judgment for back pay equal to the amount of all unpaid overtime compensation for the three years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

b) Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

c) Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

d) Awarding reasonable attorneys' fees and costs incurred in filing this action;

e) Entering an injunction precluding Defendants from violating the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; and

f) Awarding such additional relief as the Court may deem just and proper.

## COUNT II
## ILLINOIS MINIMUM WAGE LAW
## (Against Both Defendants)
## (On Behalf of Plaintiff Diaz Only)

37. Plaintiff Diaz re-states and incorporates the above paragraphs as though fully set forth herein.

38. This Count arises from Defendants' violation of the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq.*, for their failure to pay Plaintiff Diaz at the overtime wages for overtime hours.

6

39. Pursuant to the IMWL, for all weeks during which Plaintiff Diaz worked in excess of forty (40) hours, he was entitled to be compensated with overtime wages.

40. Defendants failed to provide Plaintiff with any compensation at the overtime rate for hours worked in excess of forty per workweek.

41. Defendants violated the IMWL by failing to pay Plaintiff Diaz overtime wages for all overtime hours.

42. Defendants' failure to pay at least minimum wage for all hours worked, and overtime wages for all hours worked over forty (40) per workweek is a willful violation of the IMWL, since Defendant's conduct shows that it either knew that its conduct violated the IMWL or showed reckless disregard for whether its actions complied with the IMWL.

WHEREFORE, Plaintiff Gregorio Diaz respectfully requests that this Court enter an order as follows:

a) Awarding judgment in an amount equal to all unpaid back pay owed to Plaintiff Diaz pursuant to the IMWL;

b) Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

c) Awarding statutory damages, including treble the amount of the underpayment and interest in the amount of 5% per month of underpayment, pursuant to 820 Ill. Comp. Stat. 105/12(a);

d) Awarding reasonable attorneys' fees and costs incurred in filing this action;

e) Entering an injunction precluding Defendant from violating the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*; and

f) Ordering such other and further relief as this Court deems appropriate and just.

## COUNT III – BIOMETRIC INFORMATION PRIVACY ACT
### (Against Defendant LTCM Only)
### (On Behalf of Both Plaintiffs)

43. Plaintiffs re-state and incorporate the above paragraphs as though fully set forth herein.

44. BIPA is an informed consent statute that achieves its goal of protecting individuals' privacy rights by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information," unless *it first*:

> (1) informs the subject in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

45. In the employment context, a "written release" means "a release executed by an employee as a condition of employment." 740 ILCS 14/10.

46. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

47. BIPA also established standards for how companies must handle individuals' biometric identifiers and biometric information, as follows: "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to

8

the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." 740 ILCS 14/15(a).

48. Ultimately, BIPA is simply an informed consent statute, which mandates that entities wishing to collect, store, and/or use biometric information must put in place certain reasonable safeguards to protect individuals' privacy. *See* 740 ILCS 14/15.

49. BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored , and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b).

50. BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and – importantly – deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (e.g. when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/ 1 5(a).

51. Defendant LTCM failed to comply with BIPA mandates, thus committing at least four distinct violations of BIPA with respect to Plaintiff and each putative BIPA Class member.

52. Defendant LTCM's failure to comply with BIPA mandates was negligent and/or reckless.

53. Defendant LTCM qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

54. Plaintiffs are individuals who had their "biometric identifiers" (in the form of their fingerprints and/or handprints) collected by Defendant LTCM by way of Defendant LTCM's biometric scanner, i.e. time clock. *See* 740 ILCS 14/10.

55. Plaintiffs' biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

56. Defendant LTCM violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying biometric identifiers and biometric information it collected from Plaintiffs.

57. Defendant LTCM violated 740 ILCS 14/15(b)(l) by failing to inform Plaintiffs in writing that their biometric identifiers and/or biometric information were being collected and stored.

58. Defendant LTCM violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiffs and the BIPA Class in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and/or used.

59. Defendant LTCM violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiffs before it collected, used, and/or stored their biometric identifiers and biometric information.

60. For each of the violations identified above, Plaintiffs are entitled to recover anywhere from $1,000 to $5,000 in statutory damages.

61. Therefore, Defendant LTCM violated Plaintiffs' rights to privacy in their biometric identifiers and biometric information, and committed an actionable statutory violation of BIPA. 740 ILCS 14/1, *et seq.*; *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, 29 N.E.3d 1197 (Ill. 2019).

WHEREFORE, Plaintiffs Gregorio Diaz and Maria Salgado respectfully request that this Honorable Court enter judgment in their favor and against Defendant Lab Tec Cosmetics by Marzena, Inc. and grant them the following relief:

a) Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs, including an Order requiring Defendant LTCM to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

b) Awarding statutory damages to each Plaintiff pursuant to 740 ILCS 14/20;

c) Awarding Plaintiffs their reasonable attorneys' fees and costs;

d) Awarding Plaintiffs pre- and post-judgment interest, to the extent allowable; and

e) Any further relief that is deemed just and equitable.

Dated: September 10, 2020

Alejandro Caffarelli
Madeline K. Engel
Caffarelli & Associates Ltd.
224 N. Michigan Ave., Ste. 300
Chicago, IL 60604
Tel. (312) 763-6880
acaffarelli@caffarelli.com
mengel@caffarelli.com

Respectfully submitted,

GREGORIO DIAZ, individually and on behalf of all others similarly situated, and MARIA SALGADO

By: /s/ *Alejandro Caffarelli*
    Attorney for Plaintiffs