UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORIO DIAZ, individually and on behalf all others similarly situated, and MARIA SALGADO,<br><br>        Plaintiffs,<br><br>v.<br><br>LAB TEC COSMETICS BY MARZENA, INC. and MARZENA SAVAS, individually,<br><br>        Defendants. | Case No. 1:20-cv-05326<br><br>Hon. Rebecca R. Pallmeyer |

**JOINT MOTION FOR SETTLEMENT APPROVAL
AND TO DISMISS WITHOUT PREJUDICE**

After several months of arms-length negotiations, extensive informal discovery, and detailed damages analyses, the parties have reached what they unanimously believe to be a fair and reasonable resolution of the claims presented in this case. Because one of these claims on behalf of Plaintiff Gregorio Diaz arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), the Parties request an order approving the settlement as to Mr. Diaz. Should the Court approve the settlement, the Parties further request a dismissal of this case without prejudice and with leave to reinstate, with the dismissal automatically converting to one with prejudice after forty-five (45) days in the event neither party moves to reinstate. In support of their Joint Motion, the Parties state as follows:

    1.    Plaintiffs Gregorio Diaz and Maria Salgado are former employees of Defendant Lab Tec Cosmetics by Marzena ("LTCM"). They filed their Complaint against LTCM and its President and CEO, Marzena Savas, on September 10, 2020 and alleged three distinct claims. Count I presented a claim on behalf of Mr. Diaz and others similarly situated against both Defendants for failure to pay all overtime wages due, in violation of the FLSA. Count II also

alleged a failure to pay overtime as to Mr. Diaz against both Defendants, in violation of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* In Count III, both Plaintiffs alleged that LTCM violated Illinois' Biometric Information and Privacy Act, 740 Ill. Comp. Stat. 14/1, *et seq.* (BIPA) during their employment.[1]

2. Shortly after service of the Complaint, the Parties agreed to explore a possible settlement prior to any significant investment of attorneys' fees and other expenses in the case. To that end, on November 13, 2020 Defendants produced Mr. Diaz's time and payroll records from the relevant time period, as well as other documents including employee handbooks containing policies bearing on compensation and privacy.

3. Mr. Diaz's counsel used the time and payroll records provided to perform a detailed calculation of his alleged unpaid wages and related damages and presented an opening settlement demand for both Plaintiffs as to all claims on December 3, 2020. The Parties negotiated at arms-length via email and telephone from that date until January 28, 2021, when they reached an agreement in principle. During these negotiations Defendant produced additional documents relating to Mr. Diaz's compensation.

4. The settlement, as reflected in the Settlement Agreement attached as **Exhibit A**, is the product of extended arms-length negotiations and compromises on a number of disputes that remain between the Parties. These include, but are not limited to, Mr. Diaz's hourly rate during part of the limitations period; whether the alleged violations were willful; and the impact, if any, of any alleged overpayments to Mr. Diaz during his employment. The Parties continue to disagree on these and other issues, but have opted for a prompt, negotiated resolution rather than

---

[1] The settlement of the BIPA claim as to Ms. Salgado is the subject of a separate agreement; the Parties do not seek the Court's approval as to that agreement.

extended litigation that will drive up the costs and fees on both sides, and likely make it increasingly difficult to achieve finality as the case would otherwise progress.

5. The settlement is entered between Plaintiff Diaz and Defendant LTCM. Defendant Marzena Savas denies all claims alleged against her in the lawsuit. Plaintiff Diaz and LTCM's settlement provides meaningful relief to Mr. Diaz as it relates to his wage claims. The settlement amount is intended to reflect payment to him of 100% of this alleged back wages as calculated by him (and disputed by Defendants); 20% of the liquidated damages available under the FLSA (his entitlement to which Defendant denies) based on his disputed calculation; and an additional $1,000 in settlement of his individual BIPA claim (liability for which Defendant denies). The settlement provides for separate payment of his attorneys' fees and costs, in a compromise amount reflecting approximately 70 % of the actual attorneys' fees incurred as of the date of filing of this motion.[2]

6. Court approval of the settlement is appropriate here. Throughout the arms-length negotiations, both sides were represented by experienced counsel. The settlement provides relief to Mr. Diaz and eliminates the risks the Parties would bear if this litigation continued. A presumption of fairness should therefore attach to the proposed settlement. *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982) (court approval is appropriate where the settlement fairly and reasonably resolves a *bona fide* wage dispute and the lawsuit

---

[2] Plaintiffs' counsel is mindful of the proportionality as between Mr. Diaz's recovery and the total fees recovered. These elements were separately negotiated and each were the subject of compromise in the course of the Parties' settlement discussions. Further, the Seventh Circuit has "repeatedly rejected the notion that the fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). "The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered." *Dominguez v. Quigley's Irish Pub*, *Inc.*, 897 F.Supp.2d 674, 687, citing *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000). Defendants take no position as to the division between Mr. Diaz's recovery and the attorneys' fees.

provided the necessary adversarial context to protect the employee's interests from employer overreaching); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 9, 2001).

7. The Parties further request that in its Order approving the settlement, the Court dismiss this case without prejudice and with leave to reinstate for forty-five (45) days, with the dismissal to convert to one with prejudice if no party files a motion to reinstate in that time. This will permit the Court to retain jurisdiction should any issues arise following the approval of the settlement but before the Parties have executed all obligations in connection with the agreement, including delivery of payment.

WHEREFORE, for the reasons explained herein, the Parties jointly request an Order (1) approving the Settlement Agreement attached as Exhibit A as a fair and reasonable resolution of Mr. Diaz's FLSA claim; and (2) dismissing this action without prejudice and with leave to reinstate for 45 days, after which time the dismissal shall automatically convert to one with prejudice as to all Defendants.

Dated: March 25, 2021

| FOR PLAINTIFFS | FOR DEFENDANTS LAB TEC COSMETICS BY MARZENA, INC. and MARZENA SAVAS |
|---|---|
| /s/ *Madeline K. Engel* <br> Alejandro Caffarelli <br> Madeline K. Engel <br> Caffarelli & Associates Ltd. <br> 224 N. Michigan Ave., Ste. 300 <br> Chicago, IL 60604 <br> Tel. (312) 763-6880 <br> acaffarelli@caffarelli.com <br> mengel@caffarelli.com | By: *Gerald L. Maatman, Jr.* <br> Gerald L. Maatman <br> gmaatman@seyfarth.com <br> Thomas E. Ahlering <br> tahlering@seyfarth.com <br> Alex W. Karasik <br> akarasik@seyfarth.com <br> SEYFARTH SHAW LLP <br> 233 S. Wacker Drive <br> Suite 8000 <br> Chicago, IL 60606 <br> (312) 460-5000 |